Approved: _____
COURTNEY L. HEAVEY
Assistant United States Attorney

Before:   THE HONORABLE LISA MARGARET SMITH
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - X
                                  :   **SEALED COMPLAINT**
UNITED STATES OF AMERICA          :
                                  :   Violations of
   - v. -                         :   18 U.S.C. § 1349
                                  :
NADIA MAQSOOD and                 :   19 mj 9208
AZEEM ARIF,                       :
                                  :   COUNTY OF OFFENSE:
              Defendants.         :   WESTCHESTER
                                  :
- - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

STEVEN J. MANGANELLI, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

COUNT ONE
(Conspiracy to Commit Wire Fraud and Mail Fraud)

Scheme to Defraud

1.   From at least in or about June 2018 up to and including on or about June 2019, NADIA MAQSOOD and AZEEM ARIF, the defendants, devised and executed a fraudulent scheme by which they obtained money to which they were not entitled from a company that provides warranty coverage and repair services for various appliances (the "Company"). The defendants carried out the scheme by having MAQSOOD call the Company to falsely report problems with various appliances covered by the Company's warranty contracts. Generally, upon receiving the calls from MAQSOOD, the Company arranged for a third party service provider to inspect and potentially repair the supposedly broken appliance. Once an appointment with the third party service provider was scheduled, MAQSOOD -- unbeknownst to the Company -- called the service provider and cancelled the service appointment. MAQSOOD then called the Company, pretending to be

a repairperson from the service provider, and told the Company, in sum and substance, that rather than be repaired, the appliance needed to be replaced. As a result of MAQSOOD's false representations regarding the appliances, the Company mailed checks, via the United States Postal Service, to the payee on the warranty contracts -- MAQSOOD and/or ARIF -- for the fair market value of the appliances. MAQSOOD and ARIF then cashed the checks or deposited them into their respective bank accounts.

2.   In addition to purchasing warranty coverage in their own names, NADIA MAQSOOD and AZEEM ARIF, the defendants, also purchased warranty coverage with the Company for the appliances at the residences of at least two other individuals ("Individual-1" and "Individual-2"). Similar to the appliances whose warranties were in their own names, MAQSOOD and ARIF made further fraudulent claims regarding the appliances covered by warranties in the names of Individual-1 and Individual-2. When the Company sent checks to Individual-1 or Individual-2 pursuant to these fraudulent claims, ARIF collected the payments from Individual-1 and Individual-2, either through obtaining the endorsed check or having the individual write him or MAQSOOD a personal check for the same amount.

3.   During the course of the fraudulent scheme, NADIA MAQSOOD and AZEEM ARIF, the defendants, made over 50 false claims about supposedly faulty appliances, resulting in a loss of over approximately $68,000 to the Company.

Statutory Allegation

4.   From at least in or about June 2018 through at least in or about June 2019, in the Southern District of New York and elsewhere, NADIA MAQSOOD and AZEEM ARIF, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, wire fraud, in violation of Title 18, United States Code, Section 1343, and mail fraud, in violation of Title 18, United States Code, Section 1341.

5.   It was a part and an object of the conspiracy that NADIA MAQSOOD and AZEEM ARIF, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit

2

and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, for the purpose of executing the scheme set forth above in paragraphs 1 through 3, MAQSOOD used interstate wires, in particular phone calls from the Southern District of New York to the Company's call center located outside New York, to make false reports about, among other things, appliances covered by warranty contracts with the Company.

6. It was a part and object of the conspiracy that NADIA MAQSOOD and AZEEM ARIF, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice and attempting to do so, would and did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and would and did take and receive therefrom, such matters and things, and would and did cause to be delivered by mail and such carriers according to the directions thereon, and at the places at which they were directed to be delivered by the person to whom they were addressed, such matters and things, in violation of Title 18, United States Code, Section 1341, to wit, for the purpose of executing the scheme set forth above in paragraphs 1 through 3, MAQSOOD and ARIF, caused the Company to send, by mail, checks for the replacement value of the supposedly faulty appliances to various addresses in the Southern District of New York.

(Title 18, United States Code, Section 1349.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

7. I am a Special Agent with the FBI. I have been personally involved in the investigation of this matter, and I base this affidavit on that experience, on my conversations with other law enforcement officials and others, and on my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts

I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## The Company

8. Based on my involvement in this investigation, I know that the Company is based outside of New York State and provides warranty coverage for household appliances.

9. Based on my conversations with an executive of the Company ("Executive-1"), I know that the Company generally operates in the following manner:

   a. The Company provides warranty coverage pursuant to contracts, which specify, among other things, the covered items and their location, the circumstances under which the Company will compensate for repairs or pay the item's fair market value, and the payee that would receive any such payments.

   b. The Company also contracts with other companies known as service providers that agree to make site visits to inspect and potentially repair items covered by the Company's warranties.

   c. Individuals are able to report issues with items covered by the Company's warranty policy by calling the Company's call center, which is located outside of New York State.

   d. When a customer calls to report an issue with a covered item, the Company contacts one of the service providers with whom they have a contractual relationship to schedule a time for the service provider to make a site visit, and notifies the customer of this scheduled visit.

   e. The service provider then makes a site visit to inspect the covered item at the scheduled time. Depending on the customer's warranty policy, the item, and the problem, the service provider might, among other things, repair the item or report that the item is beyond repair or too costly to repair and needs to be replaced.

   f. If the service provider tells the Company that the item is beyond repair or the repairs are too costly and

4

the item is covered by the Company's warranty, the Company mails a check for the fair market value of the item to the payee on the warranty contract.

## The Fraudulent Scheme

10.  Based on my review of records received from the Company, I have learned the following:

   a.  During the period from on or about June 2018 through on or about July 2019, the Company had numerous warranty contracts in which the listed payee was NADIA MAQSOOD, AZEEM ARIF, the defendants, Individual-1, and Individual-2.

   b.  Contracts where MAQSOOD was listed as the payee listed her address as 35 Palo Alto Place, Mount Vernon, New York ("Address-1").

   c.  Contracts where ARIF was listed as payee listed his address as 183 Sedgwick Ave. in Yonkers, New York. ("Address-2").

11.  Based on my review of calls the Company received from on or about July 2018 through on or about March 2019, which were recorded in the ordinary course of its business, I know that:

   a.  On numerous occasions, a female caller using the phone number 212-683-6700 (the "6700 Number") contacted the Company claiming, at different times, to be: "Nadia Maqsood," "Azeem Arif," Individual-1, Individual-2, and seven different individuals working for a service provider ("Service Provider-1").

   b.  On numerous calls, where the caller identified herself as MAQSOOD, ARIF, Individual-1, or Individual-2, the caller asked, in sum and substance, about the status of a repair request made on a warranty contract with the Company where MAQSOOD, ARIF, Individual-1 or Individual-2 was listed as the payees on the warranty contract.

   c.  On numerous instances when the caller identified herself as an individual working with Service Provider-1, the caller reported, in sum and substance, that she had inspected an item covered by the Company's warranty and determined that it needed numerous and costly repairs, and often recommended that the item be replaced.

          d.    During the same time period, the Company received and recorded similar phone calls from a "not identified," phone number relating to the Company's warranty contracts with MAQSOOD, ARIF, Individual-1 or Individual-2.

          e.    In each instance, whether the caller identified herself as MAQSOOD, ARIF, Individual-1, Individual-2, or an employee of a service provider, and whether she was calling from the 6700 Number or a "not identified" number, the caller's voice sounded like the same woman.

      12.    Based on my review of records from Service Provider-1, I know that from in or about July 2018 through May 2019, Service Provider-1 was notified that items covered by the Company's warranties with MAQSOOD, ARIF, Individual-1 and Individual-2 needed to be inspected. However, Service Provider-1 never actually inspected the appliances in the vast majority of cases, because the customer canceled the scheduled inspection.

      13.    Based on my review of the Company's payment information, I know that from in or about July 2018 to April 2019, the Company wrote at least 48 checks to MAQSOOD, ARIF, Individual-1, or Individual-2, for a total amount of approximately $68,000. Based on my conversation with Executive-1 and my review of the checks, I know that the Company mailed these checks using the United States Postal Service to payees at Address-1, Address-2, 85 Bella Vista Street, Tuckahoe, New York, and 333 Bronx River Road, Apt. 617, Yonkers, New York.

      14.    Based on my review of bank account records for MAQSOOD's bank account, I know that from on or about August 2018 through on or about April 2019, MAQSOOD deposited approximately 19 checks from the Company, for a total amount of approximately $24,100.

      15.    Based on my review of bank account records for ARIF's three bank accounts at two different banks, I know that from on or about August 2018 through on or about April 2019, ARIF deposited approximately 19 checks from the Company, totaling approximately $30,185. As discussed below, based on my review of the checks from the Company, I know that during the same period funds from the approximately 11 checks written from the Company to Individual-1 and endorsed by Individual-1 were deposited into ARIF's bank account, totaling approximately $20,404. In addition, I know that during that same time period, aside from a monthly rent check in the amount of $1,900, ARIF

6

received approximately four checks from Individual-3, for a total amount of approximately $8,888.

### One Example with MAQSOOD as Payee

16.     Based on my review of records from the Company, I know that on or about July 2018, the Company received a report that an appliance covered by a warranty contract where the payee was MAQSOOD ("Contract-1"), needed repair. Based on my review of phone calls that the Company recorded in the ordinary course of its business, I know that on or about July 24, 2018, the Company received a phone call from the 6700 Number wherein the caller claimed to be "Gabby," from Service Provider-1, claimed to have gone to Address-1 and inspected the appliance, and reported that numerous parts needed to be replaced.

17.     Based on my review of records from Service Provider-1, I know that on or about July 20, 2018, Service Provider-1 was notified that the appliance covered by Contract-1 needed repair, but Service Provider-1 did not make a site visit to inspect the appliance because the customer, identified as MAQSOOD, canceled the scheduled visit.

18.     Based on my review of records from the Company, I know that as a result of "Gabby's" report regarding the status of the broken item covered by Contract-1, the Company authorized a $610 payment to MAQSOOD. Based on my review of the check and bank account records, I know that on or about August 6, 2018, the Company wrote a check to MAQSOOD at Adddress-1 in the amount of $610, and on or about August 13, 2018, the check was endorsed and deposited into a bank account in MAQSOOD's name.

### One Example with ARIF as Payee

19.     Based on my review of phone calls that the Company recorded as a matter of course, I know that:

   a.     On or about February 20, 2019, the Company received a call from the 6700 Number from a caller claiming to be ARIF, who asked about the status of a repair request that had been made on an item covered by a contract where ARIF was the payee ("Contract-2"). The Company informed the caller that a representative from Service Provider-1 was going to make a site visit to inspect the item on or about February 26, 2019.

   b.     A few minutes later, the Company received a call from an unidentified number, with a caller who identified

7

themselves as "Jess" from Service Provider-1 and told the Company that she had inspected the item covered by Contract-2 and determined that numerous and costly replacement parts were needed. Based on my review of the recorded calls, the caller who identified themselves as "Jess," sounded like the same caller who had identified themselves as "ARIF" that same day.

20. Based on my review of records from the Company and my review of the check, I know that as a result of "Jess's" report regarding the status of the broken item covered by Contract-2, on or about February 25, 2019, the Company wrote a check to ARIF at Adddress-2 in the amount of $2,040.

21. Based on my review of bank account records, I know that on or about March 4, 2019, ARIF deposited the $2,040 check from the Company to his personal bank account.

### Individual-1 as Payee

22. Based on my review of records from the Company, I know that the Company was informed that for the warranty contract where Individual-1 was the payee ("Contract-3") Individual-1 had asked to be contacted at the phone number 347-439-6501 (the "6501 Number"). Based on my conversation with the MAQSOOD on or about August 8, 2019, I know that MAQSOOD identified the 6501 Number as her personal cellphone number.

23. Based on my review of records from the Company, I know that from on or about November 2018 through March 2019, the Company received reports that items covered by Contract-3 needed repair and that in all but one instance, Service Provider-1 inspected such items and recommended that they be replaced. As a result, the Company wrote checks to Individual-1 for a total amount of approximately $20,400. Based on my review of the checks and ARIF'S bank account records, I know that these checks were all deposited into ARIF's bank account.

24. Based on my review of records from Service Provider-1, I know that from on or about November 2018 through March 2019, Service Provider-1 did not make any site visits to the residence associated with Contract-3 at 333 Bronx River Road, Yonkers, New York, or inspect any items covered by Contract-3. Rather, according to Service Provider-1's records, the customer repeatedly cancelled scheduled jobs involving Contract-3.

### One Example with Individual-2 as Payee

25. Based on my review of records from the Company, I know that one of the phone numbers identified with the Company's warranty for Individual-2 was the 6501 Number.

26. Based on my review of records from the Company, I know that on or about February 19, 2019, the Company received a call from someone who identified herself as "Abby" from Service Provider-1 and recommended that an item covered by the Company's warranty for Individual-2 ("Contract-4") be replaced given the cost of repair. Based on my review of the Company's records, I know that as a result of this call, on or about February 28, 2019, the Company approved and wrote a check for $1,000 payable to Individual-2. Based on my review of the check, I know that the check was endorsed by Individual-2 and another individual ("Individual-3").

27. Based on my review of records from Service Provider-1, I know that Service Provider-1 did not go to the residence associated with Contract-4 at 85 Bella Vista Street, Tuckahoe, New York, and did not inspect items covered by Contract-4 at any time on or about February 2019 through March 2019.

28. Based on my review of copies of checks from the Company, I know that in addition to the February 28, 2019 check for $1,000 discussed above, the Company wrote checks to Individual-2 on or about March 1, 2019, in the amount of $444 and on or about March 5, 2019, in the amount of $1,123.90. Based on my review of the checks, I know that all three checks were deposited on or about March 11, 2019.

29. Based on my review of bank account records, I know that on or about March 14, 2019, ARIF received a check from Individual-3 in the amount of $2,567.90 – the combined amount of the three checks the Company wrote Individual-2 from on or about February 28, 2019 through March 5, 2019.

### Interview of MAQSOOD

30. On or about August 8, 2019, I spoke with NADIA MAQSOOD, the defendant, who stated in sum and substance, the following:

    a. Her cellular phone number is the 6501 Number and her work phone number is the 6700 Number. Her work, from

9

which she made many calls to the Company, is located in New York, New York. She lives at Address-1 and ARIF is her fiancé and lives at Address-2.

    b. Between in or about June or July 2018 and April or May 2019, MAQSOOD called the Company to file fraudulent warranty claims on appliances at her and ARIF's residences. MAQSOOD and ARIF purchased additional warranties for the residences of Individual-1 and Individual-2, and MAQSOOD made further false claims pursuant to those warranties.

    c. After calling the Company to report false warranty claims, MAQSOOD called the service providers the Company assigned and canceled their scheduled visits to inspect the items. MAQSOOD also called the Company from the 6501 Number and 6700 Number, pretending to be technicians from the service providers and falsely claimed to have inspected the appliances.

    d. MAQSOOD estimated that she filed approximately 40 to 50 false warranty claims and received approximately $30,000 to $40,000, maybe more, from the Company as a result. She stopped making false claims on or about June 2019, when the Company started raising questions about the claims she was making.

### Interview of ARIF

  31. On or about August 9, 2019, I spoke with AZEEM ARIF, the defendant, who stated in sum and substance that:

    a. He lives at Address-2.

    b. From in or about June 2018 through April or May 2019, he worked with MAQSOOD to make fraudulent warranty claims with the Company for his residence as well as the residences of MAQSOOD, Individual-1, and Individual-2.

    c. ARIF knew that MAQSOOD was calling the Company pretending to be a service provider and falsely informing the Company that the appliances covered by the Company's warranty were beyond repair. As a result of the fraudulent claims, the Company sent checks for the fair market value of the appliances. ARIF received some of the checks from the Company and deposited them into his bank account.

    d. When he and MAQSOOD needed more warranties to make fraudulent claims, ARIF purchased warranties from the

10

Company for the residences of Individual-1 and Individual-2, who were relatives of ARIF. When Individual-1 or Individual-2 received checks from the Company, at ARIF's direction, Individual-1 endorsed the checks and gave them to ARIF directly because Individual-1 did not have his/her own bank account. Individual-2 wrote ARIF a personal check for the combined amount of every two checks he/she received. In both instances, ARIF deposited the checks into his bank account.

    e. In total, ARIF estimated that as a result of the false claims, he received approximately $50,000 to $60,000 from the Company.

            _____
            STEVEN J. MANGANELLI
            Special Agent
            Federal Bureau of Investigation

Sworn to before me this
 1  day of October, 2019

_____
THE HONORABLE LISA MARGARET SMITH
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK